DECISION
The instant civil action is the first application of the Public Employee Pension Revocation and Reduction Act. R.I. Gen. Laws § 36-10.1-1 et seq. Plaintiff, the "Retirement Board", pursuant to said Act and the common law, seeks a declaratory judgment and statutory pension revocation of the public pension of Defendant, Gerald J. Pouliot, for having been convicted of crimes related to his public employment.
Defendant Pouliot is a former employee of the City of Pawtucket, Rhode Island and, as such, is a member of the State Retirement System currently receiving therefrom a monthly public pension of one thousand three hundred fifty dollars and eighty-eight cents ($1,350.88).
On or about October 28, 1992, Pouliot was indicted by a Federal Grand Jury in the United States District Court for the District of Rhode Island on four (4) counts of violations of the United States Code related to his public employment with the City of Pawtucket, Office of the City Solicitor.
On June 4, 1993, Pouliot was found guilty after trial in the U.S. District Court on Counts I and IV of the Indictment. Pouliot was found guilty on Count I — "participating in conduct of an enterprise's affairs through a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c) and guilty on County[Count] IV — "attempted extortion under color of official right by causing fear of economic harm" in violation of 18 U.S.C § 1951 and 1952.
On or about August 16, 1993, Pouliot was sentenced by the U.S. District Court — Rhode Island to forty-six (46) months imprisonment.
In December 1993, the instant civil action for pension revocation was filed pursuant to Rhode Island General Laws G.L. 1956 § 36-10.1-1 et seq. and the common law.
The Retirement Board in its complaint requests that the Superior Court issue a declaration and judgment that Pouliot has not satisfied the condition precedent of rendering honorable service in his public employment and has no legal right to receive any pension benefits from the Retirement System and, further, that the pension benefits already paid to Pouliot be refunded and returned to the Retirement Board.
On October 26, 1995, the parties stipulated and agreed that Defendant Pouliot's wife, Agnes, be permitted to intervene as a party pursuant to Rule 24 of Superior Court Rules of Civil Procedure. Specifically, Agnes Pouliot contends that under Section 1.3(D) of the Public Employee Pension Revocation and Reduction Act upon which the Retirement Board relies in seeking this declaratory judgment that Defendant Gerald Pouliot's benefits be revoked in their entirety, she has a right as an "innocent spouse" to collect.
R.I.G.L. 36-10-1-3(D) provides:
 "If the Superior Court determines that the retirement or other benefits of a public official or public employee should be revoked or reduced under this chapter, it may, in its discretion, and after taking into consideration the financial needs and resources of any innocent spouse, . . . order that some or all of the revoked or reduced benefits or payments be paid to any such innocent spouse . . . as justice may require."
This Court finds from the evidence adduced at trial, including the testimony of Gerald and Agnes Pouliot, as well as the facts stipulated to, that the Defendant Pouliot did not render "honorable service" to the people of Pawtucket, which is implicitly required according to the R.I. Supreme Court in deciding Matter of Almeida, 611 A2 1375 (1992). Regarding honorable service, our Supreme Court followed the rationale of the State of New Jersey:
 "to bestow a pension upon one `whose record of public service is marred by a conviction for malfeasance in office' would be to place a premium upon dishonesty and `inefficiency' and `burden the taxpayer with the necessity of providing for one who has betrayed the trust imposed upon him'."
 Maine v. Trustees of the Public Employees Retirement System of New Jersey, 335 A2 559 (1975).
The taxpayers of Pawtucket have a right to expect that their lawyers, being sworn to uphold the law, obey the law. Causing them economic harm by engaging in illegal conduct under the color of official right in no way can be considered "honorable service" and it would be preposterous to hold otherwise.
What remains, however, is for the Court to apply the factors set forth in R.I.G.L. 36-10.1-3(c)(d) and determine whether Agnes Pouliot is an innocent spouse and whether, considering her financial needs and resources, is entitled to all, some or none of her husband's pension.
The Retirement Board argues the Pouliot pension should be revoked in its entirety. In support of their argument, they cite the Supreme Court's decision in Matter of Almeida wherein the pension was revoked in its entirety with no allowances for recovery by an `innocent spouse'. However, at the time of Almeida's criminal conduct and at the time the Supreme Court decided his pension should be entirely revoked (June 15, 1992), the Public Employee Pension Revocation and Reduction Act was not law. Indeed, it did not become law until July 21, 1992. The instant controversy implicates the new law, which specifically provides that the interests of an innocent spouse be considered in determining whether a revocation or reduction of a pension is appropriate.
There is no evidence to find nor to suggest Agnes Pouliot is anyone other than an "innocent spouse". Her testimony compels the Court to conclude she has very limited resources at her disposal and is in need of the pension at issue.
In a recent decision from the Rhode Island Supreme Court,Moran v. Moran, 612 A2 26 (1992), Ms. Justice Murray recognized "that there exists some precedent in Rhode Island as well as in other jurisdictions, for viewing pensions in general as marital
property subject to equitable distribution". She noted that there is nearly unanimous support for that proposition:
. . . "One predominant rationale behind this weight of authority was aptly stated in one treatise as follows:
 To the extent earned during the marriage, the benefits represent compensation for marital effort and are substitutes for current earnings which would have increased the marital standard of living or would have been converted into other assets divisible at dissolution. Subjecting the benefits to division is just, because in most cases the retirement benefits constitute the most valuable asset the couple has acquired and they both have relied upon their pension payments for security in their older years." 3 Rutkin, Family Law and Practice 37.-07[1] at 37-81 (1985).
 A pension has been viewed by this court as a form of "forced savings account whose funds will become available to the parties upon retirement." Stevenson, 511 A.2d at 965.
Based on the evidence presented and the law to be followed, I find that Agnes Pouliot as an innocent spouse is entitled to one-half the pension benefits of her husband.
Counsel for the Defendant shall prepare and submit an Order consistent with the Decision.